IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TOMPKINS INSURANCE AGENCIES, INC., | : : : | |
| Plaintiff, | : : | CIVIL ACTION |
| v. | : : | NO. 16-2217 |
| JEFFREY A. SUMNER, and LOCKTON COMPANIES, LLC, | : : : | |
| Defendants. | : | |

**MEMORANDUM**

Now pending before the Court is Plaintiff's Motion to Consolidate Cases and for Remand, (Dkt No. 24 [hereinafter "Mot."]), Defendants' Response in Opposition, (Dkt No. 30 [hereinafter "Resp."]), and Plaintiff's Response in Support of its Motion, (Dkt No. 32 [hereinafter "Supp."]).

For the reasons that follow, Plaintiff's Motion will be granted in part, denied in part.

**I.      Factual and Procedural Background**

Tompkins Insurance Agencies, Inc. ("Plaintiff") filed a civil action against Jeffrey A. Sumner and Lockton Companies ("Defendants") in the Pennsylvania Court of Common Pleas for Berks County on May 6, 2016 (hereinafter "First-Filed Action"). (Dkt No. 1.) That same day, Plaintiff filed an emergency Motion for Preliminary Injunction in state court. (Supp. at 6.) A hearing was held in state court later that same day, in which Defendants' counsel participated. (Dkt No. 12.) Plaintiff represents that Defendants agreed not to further solicit Plaintiff's customers pending a hearing on the preliminary injunction. (Dkt No. 12.) The next business day, May 9, 2016, Defendants removed the state case to this Court, which was assigned docket number 16-CV-2217. (Dkt No. 1.)

Immediately after removing the state court case to this Court, Defendant Sumner then filed a separate federal action for declaratory and coercive relief against Plaintiff Tompkins (hereinafter "Second-Filed Action"), which was assigned docket number 16-CV-2218. (No. 16-2218, Dkt No. 1. [hereinafter "Second Compl."]) Defendant Sumner represented to the Clerk's Office that the case is "related to property included in an earlier numbered suit" and "involve[s]

1

the same issue of fact or grow[s] out of the same transaction as a prior suit." (No. 16-2218, Dkt No. 1-3.) Because Defendant Sumner, as the plaintiff in the Second-Filed Action, indicated that the two cases were related, the Clerk's Office assigned 16-CV-2218 to this Court as well. The Complaint in the Second-Filed Action begins with the "Nature of the Case" and states that "This is an action for declaratory and injunctive relief to prevent the enforcement of an old, void and non-enforceable restrictive covenant agreement that Tompkins has threatened to enforce against its former employee, Jeffrey Sumner." (Second Compl. ¶ 1.) The Complaint then identifies two threshold issues: (1) that the Agreement is not enforceable and (2) that, even if it were enforceable, it is not enforceable by Tompkins. (Second Compl. ¶ 1.) Despite recognizing that the nature of the case is for declaratory and injunctive relief, Defendant Sumner then seeks damages under Counts III and IV for a violation of the Pennsylvania Wage Payment and Collection Law and tortious interference with a contract, respectively. (Second Compl. ¶¶ 62-76.)

On May 19, 2016, Plaintiff then filed a Motion for Temporary Restraining Order and Preliminary Injunction. (Dkt No. 7.) The next day, the Court denied the Motion for a Temporary Restraining Order and scheduled a Preliminary Injunction hearing for May 24, 2016. (Dkt No. 8.) That morning, Defendants faxed a request for a continuance (hereinafter "First Fax"). That afternoon, Defendants faxed a second request after conferring with lead counsel indicating that (1) Defendants had not properly been served and therefore the hearing cannot occur, (2) Defendants are entitled to more time to respond, (3) Defendants need expedited discovery, and (4) Plaintiff named the wrong Lockton entity as a Defendant (hereinafter "Second Fax"). Plaintiff then responded to inform the Court that the request for a continuance was opposed, as were Defendants' contentions regarding service of the complaint, expedited discovery, and the proper Lockton entity (hereinafter "Third Fax"). Because this was a clear violation of the Court's Policies and Procedures, the requests were denied. (Dkt No. 10.) Thereafter, Defendants filed an Emergency Motion for Continuance, (Dkt No. 11), which Plaintiff opposed, (Dkt No. 12), and Defendants filed a Reply, (Dkt No. 13). The Court granted the continuance and rescheduled the preliminary injunction hearing for May 26, 2016. (Dkt No. 14.)

The day before the hearing, on May 25, 2016, Defendants filed a Response in Opposition to the Motion for Preliminary Injunction, (Dkt No. 15), a Motion to Dismiss for Failure to State a Claim and Lack of Standing based on its belief that Plaintiff named the wrong Lockton entity

(Dkt No. 17), and a Motion to Dismiss Counts III and IV for Failure to State a Claim for factual and legal insufficiency, (Dkt No. 18). At the May 26, 2016 hearing, the Court directed Plaintiff to respond to the Motions to Dismiss as soon as possible, or by June 2, 2016 at the latest, and rescheduled the Preliminary Injunction hearing for June 2, 2016. (Dkt No. 19.) On May 31, 2016, Plaintiff filed an Amended Complaint adding the Northeast Series of Lockton as a defendant. (Dkt No. 22 [hereinafter "A.C."].) Because the Northeast Series of Lockton is incorporated in New York, as is Plaintiff Tompkins, Plaintiff then filed a Motion to Consolidate and Remand. (Dkt No. 24 [hereinafter "Mot."].)

Later that same day, Defendants filed a motion to vacate the hearing scheduled for June 2, 2016 and all related discovery orders arguing that the orders could no longer stand now that the Court lacked subject matter jurisdiction. (Dkt No. 25.) Rather than vacate the orders and further delay the preliminary injunction hearing only to later receive an opposition to remand insisting the Court in fact possess jurisdiction, the Court requested that Defendants specifically inform the Court of whether there was opposition to the Motion for Remand. (Dkt No. 26.) Despite Defendants' previous insistence that the Court vacate all orders in light of its lack of jurisdiction, Defendants did in fact submit a statement regarding the intention to oppose remand and for the court to retain jurisdiction. (Dkt No. 29.) Therefore, rather than hold a preliminary injunction hearing on June 2, 2016, the Court held arguments as to the issue of jurisdiction and remand. At the close of the hearing, the Court permitted Defendants until June 7, 2016 to file a full opposition to Plaintiff's Motion for Consolidation and Remand. In addition, the Court directed Defendants to address the status of the Second-Filed Action and whether the Court should decline jurisdiction over the matter pursuant to its discretion under the Declaratory Judgement Act and the Third Circuit's decision in *Reifer v. Westport Ins. Corp.*, 751 F.3d 129 (3d Cir. 2014).

On June 7, 2016, Defendants filed a Response in Opposition to Plaintiff's Motion. (Dkt No. 30.) Although Defendants previously insisted that the wrong Lockton entity was sued and the Northeast Series was in fact the proper entity, Defendants argue in the Response that the Court should nonetheless deny joinder of Northeast Series as a non-diverse party under 28 U.S.C. 1147(e). (Resp. at 5.) Defendants further argue that the Court should retain jurisdiction over, what Defendants repeatedly refer to as, "the Declaratory Judgment Action." (Resp. at 8.) The Court then directed Plaintiff to respond no later than June 8, 2016, in order to permit

3

Plaintiff an opportunity to address the issue of this Court's jurisdiction over the Second-Filed Action. (Dkt No. 31.) Plaintiff filed the Response in Support of its Motion to Consolidate and Remand on June 8, 2016. (Dkt No. 32.) The matter is now ripe for ruling.

## II.     The Two Actions Will Not Be Consolidated

As a general rule, "[i]f actions before the court involve a common question of law or fact, the court . . . may consolidate the actions." FED. R. CIV. P. 42(a)(2); *Smithkline Beecham Corp. v. Geneva Pharms.*, No. 99–2926, 2001 WL 1249694 (E.D. Pa. 2001). But, "[w]hile a consolidation order may result in a single unit of litigation, such an order does not create a single case for jurisdiction purposes." *Cella v. Togum Constructeur Ensembleier en Industrie Alimentaire*, 173 F.3d 909, 912 (3d Cir. 1999). As a result, the Court cannot consolidate one case initially filed in state court and removed to federal court with another case initially filed in federal court only to remand both cases to state court. *Bradgate Associates, Inc. v. Fellows, Read & Associates, Inc.*, 999 F.2d 745, 751 (3d Cir. 1993) ("[W]hen a removed state court case has been consolidated with a case originally filed in federal court and the district court determines that it lacks subject matter jurisdiction over both the federal and state components of the case, the court must apply the rules pertaining to dismissal and remand as if the cases had retained their separate identities and had never been consolidated."). Therefore, consolidation is not appropriate here and the Court must separately determine its jurisdiction over both actions.

## III.    The First-Filed Action Will be Remanded to State Court

The procedure after removal of a state court action to federal court is governed by 28 U.S.C. § 1447. "If after removal plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State Court." 28 U.S.C. § 1447(e).[1] Therefore, the Court must decide between either denying joinder and keeping the action or permitting joinder and remanding the action. Although the Third Circuit has not formally adopted an analytical approach for this decision, it has advised that the Fifth Circuit approach in *Hensgens v. Deere & Co.*, 833 F.2d 1179 (5th Cir. 1987) is instructional. *Hayden v. Westfield Ins. Co.*, 586 F. App'x. 836, 840 (3d

---

[1] "Plaintiff filed an amended complaint prior to filing the present motion to remand, which would normally be permitted without leave of court because it was filed within twenty-one days of service of defendant's motion to dismiss." Delaware Cty., Pa. v. MERSCORP, Inc., No. 2:13-CV-6517-CDJ, 2014 WL 4545765, at *2 (E.D. Pa. Sept. 15, 2014) (Jones II, J.) (citing FED. R. CIV. P. 15(a)(1)). "However, because the amendment would ultimately divest this court of jurisdiction, the court must first decide whether to permit joinder of the proposed non-diverse party." Id. (citing 28 U.S.C. § 1447(e)).

Cir. 2014). Based on the Third Circuit's guidance, "when a district court is 'faced with an amended pleading naming a new nondiverse defendant in a removed case, [it] should scrutinize that amendment more closely than an ordinary amendment,' and should consider 'the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether [the] plaintiff has been dilatory in asking for amendment, whether [the] plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities.'" *Hayden*, 586 F. App'x. 836, 840-41 (quoting *Hensgens*, 833 F.2d 1179, 1182).

First, it is clear that the purpose of the amendment is not simply to defeat federal jurisdiction. On May 25, 2016, Defendant Lockton Companies, LLC filed a Motion to Dismiss for Lack of Standing , (Dkt No. 17 [hereinafter "MTD"]), asserting that the proper defendant is not Lockton Companies, LLC, but rather the Northeast Series of Lockton Companies, LLC. Pursuant to FED. R. CIV. P. 15(a)(1), Plaintiff was then afforded twenty-one days to amend its complaint as a matter of course.[2] On May 31, 2016, well within the time period to file an amendment as a matter of course, Plaintiff filed its first Amended Complaint adding the Northeast Series of Lockton Companies, LLC (hereinafter "Northeast Series"). (Dkt No. 22.) The addition of the Northeast Series was in direct response to Defendants' allegation that "Mr. Sumner is associated with the Northeast Series of Lockton Companies." (MTD at 1.)

Furthermore, as Defendants admit, the circumstances demonstrate that Plaintiff appeared to be "mistaken" as to whether Northeast Series had merged into Lockton Companies, LLC when filing the initial complaint. Defendants then explain that "Lockton Companies, LLC recently became a Missouri series limited liability company and the Northeast Series, which had been a series of the Illinois series limited liability company, is now a series of a Missouri series limited liability company, which is why Tompkins did not find the Northeast Series as an active entity in a search of Illinois businesses." (MTD at 2.) In light of this explanation and Plaintiff's prompt amendment in response to said explanation, the circumstances demonstrate that Plaintiff

---

[2] As previously recognized, the Court is well aware that 28 U.S.C. 1447(e) permits the court to deny joinder of additional defendants who would destroy diversity after removal, even if the amendment is made as a matter of course under FED. R. CIV. P. 15. Nonetheless, the Court finds it important to note that the amendment would be permitted as a matter of course in response to a motion to dismiss to the extent that this demonstrates (1) Plaintiff's amendment was not to defeat jurisdiction, but at the Defendants' insistence, and (2) Plaintiff's amendment was made in a manner that would be considered timely under the rules and therefore weighs against a finding of dilatoriness. *See, e.g.*, *Delaware Cty., Pa. v. MERSCORP, Inc.*, No. 2:13-CV-6517-CDJ, 2014 WL 4545765, at *4 (E.D. Pa. Sept. 15, 2014) (Jones II, J.) ("[D]efendants' argument that plaintiff waited until they filed a motion to dismiss is not convincing because the federal rules expressly permit parties to amend their complaint as of right within twenty-one days of the filing of a motion[.]").

amended its complaint to add Northeast Series in direct response to the Motion to Dismiss in order to correct an understandable mistake, not with the purpose to destroy diversity.

Second, Plaintiff was not dilatory in asking for amendment. As addressed above, Plaintiff filed its Amended Complaint as a matter of right shortly after Defendants' Motion to Dismiss. Defendants assert that Plaintiff knew the wrong company was named all along. (Resp. at 7.) However, as far as the Court can discern, the issue of the wrong company being named was not raised until Defendants claimed as much, improperly, in a fax received by this on May 20, 2016. The issue was not raised properly until Defendants' motion to Dismiss on May 25, 2016, after which Plaintiff promptly amended its complaint. Therefore, the Court cannot agree with Defendants' position, and concludes that Plaintiff was not dilatory in asking for amendment.

Third, Plaintiff will be significantly injured if amendment is not allowed. If Defendants' allegations are correct that Northeast Series is in fact the company with which Mr. Sumner was associated and therefore the company from which he can seek relief, Plaintiff will be significantly injured if unable to join Northeast Series.

Finally, equity favors permitting joinder. Defendants repeatedly argued that Plaintiff's claim is properly against Northeast Series; first in a fax received by this Court on May 20, 2016, second in Defendants' Motion to Dismiss for Lack of Standing filed on May 25, 2016, and third in the preliminary injunction conference held on May 26, 2016. Defendants now argue that it would be inequitable to join the proper company because it would cause the First-Filed Action to be remanded to state court while the Second-Filed Action would remain in federal court thereby creating parallel proceedings. As a preliminary issue, the Court notes that this argument presumes that the Court will agree with Defendants' positon that it ought to retain jurisdiction over the Second-Filed Action. But more importantly, this argument ignores what the true effect of denying joinder would be.

If the Court were to deny joinder of Northeast Series and retain the Second-Filed Action as Defendants request, parallel state and federal court litigation would still exist because Plaintiff would then be left to separately sue Northeast Series in state court, thereby creating one federal court action involving the First-Filed Action removed by Defendants, one federal court action brought by Defendants as the Second-Filed Action, and one state court action identical to the First-Filed Action with only Northeast Series as a Defendant. To argue that this result would avoid inefficient parallel state and federal proceedings is incorrect; in fact, refusing joinder

would create even more extensive overlapping but separate litigation. In addition, refusing joinder and thereby leaving Plaintiff to separately sue Northeast Series in state court on identical grounds will "be a great waste of judicial resources." *Kahhan v. Mass. Cas. Ins. Co.*, No. CIV. A. 01-1128, 2001 WL 1454063, at *3 (E.D. Pa. 2001). Furthermore "because a federal court sitting in diversity is required to apply state law, [defendants] will not be prejudiced by a decision to remand. In fact, when there is a lack of a significant federal interest in deciding the state law issues, federal courts prefer to have state courts interpret their own laws." Id. Therefore, based on Defendants' repeated assertions that Northeast Series is a proper defendant and the serious inefficiency that would result from requiring a separate state court action against Northeast Series, the Court finds it would be inequitable to now follow Defendants' assertion that Plaintiff be precluded from joining this proper defendant, Northeast Series.

In light of the Court's consideration of the foregoing *Hensgens* factors, the Court has determined that all of the factors weigh in favor of permitting plaintiff to amend the complaint to join Northeast Series. Moreover, because the parties concede that joinder would destroy complete diversity of citizenship, this court no longer has jurisdiction to hear the First-Filed Action. Therefore, the Court will permit joinder and remand the First-Filed Action to State Court pursuant to 28 U.S.C. 1447(e).

## IV. The Court Will Decline to Exercise Jurisdiction Over Mr. Sumner's Second-Filed Action

The Court informed the parties that it was considering whether to decline to exercise jurisdiction over the Second-Filed Action at the June 2, 2016 hearing to address the issue of jurisdiction. The Second-Filed Action includes four counts. Count I seeks a declaratory judgment declaring that (A) the Agreement is unenforceable for lack of consideration and because it was not ancillary to Mr. Sumner's employment, (B) Tompkins was not a party to the Agreement and therefore does not possess the right to enforce it, (C) Leesport materially breached Mr. Sumner's employment agreement thereby excusing Mr. Sumner from any purported obligations owed to Leesport, and (D) Mr. Sumner does not have any valid and enforceable post-employment restrictions. Count II seeks injunctive relief enjoining Tompkins from (A) enforcing or attempting to enforce the agreement, and (B) interfering or attempting to interfere with Mr. Sumner's association with Lockton and Mr. Sumner's ability to represent his own customers. Count III, brought pursuant to the Pennsylvania Wage Payment and Collection Act, seeks (A)

unpaid wages, (B) statutory liquidated damages, (C) any other relief the court deems just and proper, and (D) a declaration that Mr. Sumner is excused from any purported obligations to Leesport as a result of the material breach. Count IV seeks damages for tortious interference with pre-existing prospective business and contractual relationships.

### a. The Court May Exercise Its Discretion as to Whether the Second-Filed Action Should Remain in Federal Court

As a preliminary matter, the Court notes that Mr. Sumner does not argue that the Declaratory Judgment Act is inapplicable in light of Mr. Sumner's inclusion of claims in Counts III and IV for monetary relief. Although the Court could consider the argument waived as a result, in order to exhaustively consider the issues presented, the Court will address the issue nonetheless. Unfortunately, the Third Circuit has "never ruled on the legal standard a district court must apply when addressing whether it may decline jurisdiction when both declaratory and legal relief are claimed." *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 135 n.5 (3d Cir. 2014). Adding further complication to the matter, other "circuits are 'sharply divided' and advance four[3] different standards." *Id.* (citing *Perelman v. Perelman*, 688 F.Supp.2d 367, 374-75 n.3 (E.D. Pa. 2010)). Therefore, the Court will undertake a review of the various tests used by federal courts throughout the country before selecting and applying the most appropriate tests.

### i. Legal Standards Governing Mixed Claims for Declaratory and Coercive Relief

The Second, Fourth, Fifth, and Tenth Circuits have taken an approach that most favors retaining jurisdiction. Under this approach, a district court can only decline to exercise jurisdiction over a mixed case when *Colorado River* abstention applies, or when the claims for coercive relief are frivolous or added as a means of defeating the discretion afforded under the Declaratory Judgment Act. *New England Ins. Co. v. Barnett*, 561 F.3d 392, 396 (5th Cir. 2009); *see also VonRosenberg v. Lawrence*, 781 F.3d 731, 735 (4th Cir. 2015) (adopting *Barnett*), *as amended* (Apr. 17, 2015); *United States v. City of Las Cruces*, 289 F.3d 1170, 1181–82 (10th Cir. 2002) (dicta); *Vill. of Westfield v. Welch's*, 170 F.3d 116, 125 n. 5 (2d Cir. 1999) (dicta).

---

[3] The Fourth Circuit maintained a middle-of-the-road approach before adopting the test espoused by the Fifth Circuit in 2015. *VonRosenberg v. Lawrence*, 781 F.3d 731, 735 (4th Cir. 2015), *as amended* (Apr. 17, 2015) ("We now join several of our sister circuits in holding that *Colorado River,* not *Brillhart/Wilton*, must guide a court's decision to abstain from adjudicating mixed complaints alleging claims for both declaratory and nondeclaratory relief."). As a result, the circuits are now split among three tests rather than four.

*Colorado River* abstention imposes a "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976). Therefore, although there are exceptions to this obligation, federal courts must apply these exceptions narrowly and "[o]nly the clearest of justifications warrant dismissal." *Id.* at 818-19. In deciding whether a federal court should decline jurisdiction in the face of concurrent state litigation, a federal court must first determine that there are parallel state and federal court actions before then considering the inconvenience of the federal forum, the desirability of avoiding piecemeal litigation, whether state or federal law provides the rule of decision, and the order in which jurisdiction was obtained by the concurrent forums. *Id.*; *see also Ryan v. Johnson*, 115 F.3d 193 (3d Cir. 1997) (recognizing the presence of parallel actions to be a threshold issue).

The Seventh and Ninth Circuits have adopted the "independent claim" test. First, the court must decide whether the coercive claim is "independent," which arises when the coercive claim, by itself, is "sufficient to invoke federal subject-matter jurisdiction and can be adjudicated without the requested declaratory relief." *R & R Street & Co., Inc. v. Vulcan Materials Co.*, 569 F.3d 711, 715 (7th Cir. 2009) (citing *United Nat'l Ins. Co. v. R & D Latex Corp.*, 242 F.3d 1102, 1113 (9th Cir. 2001)). "If, in an action containing both coercive and declaratory claims, the coercive claims are independent and non-frivolous, then the Ninth and Seventh Circuits hold that a federal court is required by *Colorado River* to exercise unflagging jurisdiction over the coercive claims and cannot stay or dismiss them." *Perelman v. Perelman*, 688 F.Supp.2d 367, 375 (E.D. Pa. 2010). "Where a coercive claim is not independent, however, the Ninth and Seventh Circuits hold that a court can exercise discretion under *Brillhart* and *Wilton* over both the coercive and declaratory claims and decline to hear them both." *Id.*

The third approach has been espoused by district courts in circuits that have yet to decide the proper approach for mixed claims, including district courts in our district, and is termed the "heart of the action" test. *ITT Indus., Inc. v. Pac. Employers Ins. Co.*, 427 F. Supp. 2d 552, 556 (E.D. Pa. 2006) (collecting cases). Under this test, "[i]f the outcome of the coercive claims hinges on the outcome of the declaratory ones, *Wilton's* standard governs; conversely, if the opposite applies, *Colorado River's* standard applies." *Id.* (quoting *Coltec Indus. Inc. v. Continental Ins. Co.*, 2005 WL 1126951, at *2 (E.D. Pa. 2005)). "In practice, the courts following this approach have uniformly found the 'heart' of the claims before them to be

9

declaratory and found that they had discretion to dismiss both the coercive and declaratory claims under *Brillhart* and *Wilton* (although in at least one case, the court did not exercise that discretion and retained jurisdiction)." *Perelman*, 688 F.Supp.2d at 375-76.

### ii. Legal Standard Governing Mixed Claims for Declaratory and Coercive Relief in the District Courts of the Third Circuit

As far as this Court is able to discern, no district court in our circuit has followed the approach of disregarding the discretionary jurisdiction of the Declaratory Judgment Act and wholesale applying *Colorado River* abstention even to mixed claims. *See*, *e.g., Pereleman*, 688 F.Supp.2d at 376 (adopting the independent claim test); *ITT Indus., Inc. v. Pac. Employers Ins. Co.*, 427 F. Supp. 2d 552, 557 (E.D. Pa. 2006) ("The Court finds that the considerations underlying the decisions in *Colorado River* and *Wilton* regarding a district court's obligation to exercise jurisdiction over an action are better served by the fact-driven "heart of the matter" approach than the application of a bright-line rule."); *Hartford Ins. Co. of the Se. v. John J.*, 848 F. Supp. 2d 506, 512 (M.D. Pa. 2012) (adopting the "heart of the matter" test); *Columbia Gas of Pa. v. Am. Int'l Grp.*, No. 10-1131, 2011 WL 294520, at *2 (W.D. Pa. 2011) (adopting the "heart of the matter test"). The overwhelming persuasive authority rejecting wholesale application of *Colorado River* abstention is based on the recognition that "[t]o apply the *Colorado River* standard to actions containing both declaratory judgment and coercive claims without an analysis of the facts at hand would be to ignore the Supreme Court's specific recognition that declaratory judgment actions necessitate a different treatment than other types of cases." *ITT Indus., Inc., 427 F. Supp. 2d at 557; see also Rarick v. Federated Service Ins. Co.*, No. CIV. A 13-03286, 2015 WL 5677295, at *4 (E.D. Pa. 2015) (quoting *ITT Indus., Inc.*); *Columbia Gas of Pa.*, 2011 WL 294520, at *2 (quoting same); *Leonard v. State Farm Mut. Auto. Ins. Co.*, No. CIV. A 08-1451, 2009 WL 3088425, at *6 (W.D. Pa. 2009) (quoting same). The Court will follow the persuasive and well-reasoned authority of the district courts in this circuit in rejecting a wholesale application of *Colorado River* abstention in this mixed case.

With the most drastic approach eliminated, the more reasonable "independent claim" and "heart of the matter" tests remain. The Court finds it important to note that, with the exception of *Perelman*, district courts in this circuit have uniformly applied the "heart of the matter" test, even after the decision in *Perelman*. *See*, *Hartford Ins. Co. of the Se. v. John J.*, 848 F. Supp. 2d 506, 512 (M.D. Pa. 2012) ("The logic in Perelman would eviscerate the discretionary nature of the

Declaratory Judgment Act in allowing a declaratory claim to be combined with a legitimate, but otherwise superfluous claim for injunctive relief so long as diversity jurisdiction was triggered."); *see also Easterday v. Federated Mut. Ins. Co.*, No. CIV. A 14-1415, 2016 WL 492481, at *3 (E.D. Pa. 2016) (continuing to apply the "heart of the matter" test despite *Perelman*); *Rarick v. Federated Serv. Ins. Co.*, No. CIV. A 13-03286, 2015 WL 5677295, at *4 (E.D. Pa. 2015) (same). Because the coercive claims are dependent on the outcome of the declarations sought and therefore the declarations are what truly form the heart of the matter, the discretion of the Court to stay or dismiss the claims is invoked under either test. Therefore, the Court need not decide which test is better reasoned at this time.

### iii. Analysis of Mr. Sumner's Mixed Claims under This Circuit's Tests

As the Court previously noted, Defendants make no argument that the Court lacks discretion under the Declaratory Judgment Act, only that the Court ought to exercise that discretion to retain jurisdiction over the Second-Filed Action. Perhaps telling of the true nature of the Second-Filed Action, Mr. Sumner begins his Complaint with the "Nature of the Case," which he characterizes as "an action for declaratory and injunctive relief to prevent the enforcement of an old, void and non-enforceable restrictive covenant agreement that Tompkins has threatened to enforce against its former employee, Jeffrey Sumner." (Second Compl. ¶ 1.) Mr. Sumner then repeatedly refers to the Second-Filed Action as "Mr. Sumner's Declaratory Judgment Action" and "the Declaratory Judgment Action" throughout his argument. (*See* Resp.) Although Mr. Sumner essentially concedes the Second-Filed Action is, most preeminently, one for declaratory relief, the Court is unwilling to make such an assumption. Therefore, the Court will analyze the case with regards to both tests used in this Circuit in order to ensure this case invokes the discretion permitted under the Declaratory Judgment Act. Based on the following analysis, the Court finds that Mr. Sumner's Second-Filed Action with mixed claims for declaratory and coercive relief invokes this Court's discretion to stay or dismiss the claims under both the "independent claim" and "heart of the matter" tests.

The "independent claim" test asks whether the coercive claims (1) are alone "sufficient to invoke federal subject-matter jurisdiction," and (2) "can be adjudicated without the requested declaratory relief." *R & R Street & Co., Inc. v. Vulcan Materials Co.*, 569 F.3d 711, 715 (7th Cir. 2009). Even if Mr. Sumner's coercive claims are alone sufficient to invoke federal subject matter jurisdiction, the coercive claims cannot be adjudicated without the requested declaratory relief.

11

Mr. Sumner seeks four declarations in Count I upon which the coercive claims are dependent: (A) the Agreement is unenforceable for lack of consideration and because it was not ancillary to Mr. Sumner's employment, (B) Tompkins was not a party to the Agreement and therefore does not possess the right to enforce it, (C) Leesport materially breached Mr. Sumner's employment agreement thereby excusing Mr. Sumner from any purported obligations owed to Leesport, and (D) Mr. Sumner does not have any valid and enforceable post-employment restrictions. (Second Compl. ¶ 57.)

Mr. Sumner's first coercive claim, Count II, seeks injunctive relief enjoining Tompkins from (A) enforcing or attempting to enforce the agreement, and (B) interfering or attempting to interfere with Mr. Sumner's association with Lockton and Mr. Sumner's ability to represent his own customers. (Second Compl. ¶ 61.) In order for the Court to enjoin Tompkins from enforcing the agreement, the Court must first decide and declare that the Agreement is in fact unenforceable, as requested in Count I (A). In order for the Court to enjoin Tompkins from interfering with Mr. Sumner's association with Lockton and its clients, the Court must first decide and declare that Mr. Sumner does not have any valid and enforceable post-employment restrictions, as requested in Count I (D). Therefore, the coercive claims sought in Count II are dependent on the declarations sought by Mr. Sumner.

Mr. Sumner's second coercive claim, Count III, seeks damages for violation of the Pennsylvania Wage Payment and Collection Law (hereinafter "WPCL"). Mr. Sumner alleges that he "did not receive the consideration that was explicitly promised" and therefore he is owed wages under WPCL. (Second Compl. ¶ 66.) In Count I, Mr. Sumner seeks a declaration that "Leesport materially breached Mr. Sumner's employment agreement thereby excusing Mr. Sumner from any purported obligations owed to Leesport" based on an allegation that "Leesport materially breached Mr. Sumner's employment agreement as of January 17, 2008 as it had not paid wages promised to Mr. Sumner in violation of Pennsylvania's Wage Payment and Collection Law." (Second Compl. ¶ 56(3).) As is clear from the quoted allegation, Mr. Sumner's request for coercive relief in Count III is entirely dependent on this Court declaring the relief sought in Count I.

Mr. Sumner's third and final coercive claim, Count IV, seeks damages for tortious interference with pre-existing prospective business and contractual relationships based on Tompkins' "attempt to enforce the Essick & Barr Agreement." (Second Compl. ¶ 73.) In order to

determine whether Tompkins's attempt to enforce the Agreement constitutes tortious interference, the Court must first determine that either the Agreement is unenforceable or Tompkins lacks the right to enforce it – both of which are declarations sought in Count I. (Second Compl. ¶ 57.) Therefore, this coercive claim is likewise dependent on the declaratory relief sought.

As perhaps has become clear from the foregoing discussion, when the coercive claims are dependent on the declarations sought, it is also evident that the declarations are what truly form the "heart of the matter." At the heart of the matter is Mr. Sumner's request for a declaration that the Agreement is invalid. Each coercive claim sought by Mr. Sumner is contingent upon this determination. Either the Agreement is invalid and Mr. Sumner can pursue an injunction in addition to his tortious inference claim, or it is valid and Mr. Sumner can pursue his claim under the WPCL. Because Mr. Sumner's coercive claims are dependent on the declarations sought, which in fact form the "heart of the matter," the Court must now consider whether to decline jurisdiction over this mixed case for declaratory and coercive relief. *R.R. St. & Co. v. Vulcan Materials Co.*, 569 F.3d 711, 717 (7th Cir. 2009) (stating that, when coercive claims are not independent, the court can exercise its discretion under *Wilton/Brillhart* and abstain from hearing the entire action).

### b. The Court Will Exercise Its Discretion to Stay or Dismiss the Second-Filed Action

#### i. *Legal Standard Governing Discretion to Decline Jurisdiction*

"Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). As a result, although a district court *may* exercise jurisdiction over a suit for declaratory relief, the court is "under no compulsion to exercise that jurisdiction." *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942). This is because "[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties" and "gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Id.* at 495. Therefore, a district court should consider a series of relevant

factors pertaining to "whether the questions in controversy between the parties to the federal suit . . . can better be settled in the proceeding pending in the state court." *Id.*

The first series of non-exclusive factors was announced in *Brillhart* itself and includes: (1) the scope of the pending state court proceeding, (2) the nature of the defenses open there, (3) whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, and (4) whether necessary parties have been joined or are amenable to process in that proceeding. *Id.* Over the years, the Third Circuit has continued to enumerate factors for district courts to consider when deciding whether to exercise jurisdiction. *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 140 (3d Cir. 2014). The next series includes four general factors for district courts to consider: (5) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy, (6) the convenience of the parties, (7) the public interest in settlement of the uncertainty of the obligation, and (8) the availability and relative convenience of other remedies. *Id.* (citing *United States v. Com. of Pa. Dept. of Environmental Resources*, 923 F.2d 1071, 1075 (3d Cir. 1991). Most recently, the Third Circuit further elaborated on these factors to add (9) a general policy of restraint when the same issues are pending in a state court, (10) avoidance of duplicative litigation, and (11) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata. *Id.* at 146. "These factors are non-exhaustive, and there will be situations in which district courts must consult and address other relevant case law or considerations." *Id.* Nonetheless, the Court begins with the enumerated factors as a starting point for its analysis.[4]

---

[4] Despite recognizing that the Court must consider at least a dozen factors in deciding whether to decline jurisdiction, Mr. Sumner's argument regarding these factors is limited to one paragraph:
> Particularly relevant to the Court's application of the *Reifer* analysis is that Mr. Sumner has brought additional claims that are different from the scope of claims brought by Tompkins. Mr. Sumner's Declaratory Judgment Action seeks: a declaratory judgment that the Essick & Barr Agreement is unenforceable; injunctive relief barring the enforcement of the Essick & Barr Agreement against him; relief from Tompkins' violation of the Pennsylvania Wage Payment and Collection Law; and relief from Tompkins' tortious interference with Mr. Sumner's pre-existing prospective business and contractual relationships. These particular claims would therefore not be pending in state court upon a remand of this action. In addition, a declaration by this Court concerning the Essick & Barr Agreement would resolve the obligations, if any, Mr. Sumner has to Tompkins. The Court can – and should – retain jurisdiction over the Declaratory Judgment Action.

(Resp. at 9.) The Third Circuit, however, requires "[t]he weighing of these factors [to] be articulated in a record sufficient to enable [] abuse of discretion review." *Reifer v. Westport Ins. Co.*, 751 F.3d 129, 147 (3d Cir. 2014). Therefore, despite Mr. Sumner's limited opposition, the Court will engage in a thorough review of each factor.

*ii. An Analysis of the Relevant Factors Warrants Exercising Discretion to Decline Jurisdiction*

First, the scope of the pending state court proceeding fully encompasses or is capable of encompassing the claims brought in this case.[5] The claims brought in the First-Filed Action include two counts of breach of contract, which then permits Mr. Sumner to litigate the substance of Counts I, II, and III of the Second-Filed Action as defenses to breach of contract because each of those Counts, in essence, argues that the contract is invalid. In addition, Count IV can be raised as a counterclaim pursuant to PA. R. CIV. P. 1017(a)(2). Therefore the scope of the pending state court proceeding encompasses nearly all of the issues in the Second-Filed Action and, because an answer has not yet been filed which can include both defenses and counterclaims, the issues not yet included in state court can still be raised. As a result, the first factor weighs in favor of this Court declining jurisdiction.

Second, the nature of the defenses open in state court are equivalent to the defenses open in federal court because only state law claims were raised in both the First-Filed and Second-Filed Actions; therefore, even if it did remain in federal court, the federal court would be required to apply state law. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938); *see also Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258 (3d Cir. 2011) ("A federal court sitting in diversity must apply state substantive law and federal procedural law."). In addition, Mr. Sumner has not yet filed an answer in the First-Filed Action and, therefore, he will still have an opportunity to raise his defenses in state court. PA. R. CIV. P. 1030; 1032. Because each potential defense is equally open in state court, and would be a state law defense, this factor weighs in favor of this Court declining jurisdiction.

Third, the claims of all parties in interest will not only be satisfactorily adjudicated in state court, but can be better adjudicated in state court. At least part of the proceedings must occur in state court because both Tompkins and Northeast Series are New York corporations. Therefore, keeping any portion of the proceedings in federal court will prevent all the claims of all the parties in interest from being satisfactorily adjudicated in one forum. On the other hand, if this portion of the proceedings is dismissed to be pursued in state court, then all the claims of all

---

[5] Although there is no pending state court proceeding at this instant, the First-Filed Action will be remanded to state court pursuant to Section III of this Memorandum. Because remanding the First-Filed Action to state court is not reviewable, there is no question that there will be a parallel state court proceeding upon issuance of this Memorandum and Order. 28 U.S.C. 1447(d). Therefore, the Court will undertake the analysis of the factors with the understanding that this Remand Order will reinstate the parallel state court proceeding.

the parties in interest can be adjudicated in one forum. In addition, all of the claims are state law claims and, as a result, the Court is certain that the state court will be able to more than satisfactorily adjudicate the matter. Therefore, the third factor weighs in favor of this Court declining jurisdiction.

Fourth, unlike if the cases were to remain in federal court, all necessary parties can be joined in state court. Keeping the First-Filed Action and Second-Filed Action together in federal court would require this Court to deny joinder over Northeast Series pursuant to 28 U.S.C. § 1447(e), a defendant that the current defendants have repeatedly referred to as a necessary party. Therefore, if the cases are kept together in federal court, this necessary party would have to be separately sued in state court. Remanding the First-Filed Action and declining jurisdiction over the Second-Filed Action, however, will permit all necessary parties to be joined in the state court proceeding. Therefore, the fourth factor weighs in favor of this Court declining jurisdiction.

Fifth, the Court considers the likelihood that a federal court declaration will resolve the uncertainty of the obligation which gave rise to the controversy. A federal court declaration regarding the validity of the Agreement, just the same as a state court declaration on the matter, would resolve a majority of the uncertainty that gave rise to the controversy. However, even if this Court were to issue declarations and adjudicate each matter raised in the Second-Filed Action, it would still leave three issues raised in the First-Filed Action unanswered – Count III: Breach of Duty of Loyalty by Mr. Sumner's, Count IV: Misappropriation of Trade Secrets by all Defendants, and Count V: Tortious Interference with Tompkins's Contractual Relationships by all Defendants. Because a federal court declaration cannot completely resolve the uncertainty of the obligation which gave rise to the controversy, the fifth factor weighs in favor of this Court declining jurisdiction.

Sixth, the convenience of the parties is surely served by adjudicating the overlapping cases in one forum. This is particularly true in light of the fact that the state court and federal court share the same geographic region, thereby precluding any argument that there is a great geographical convenience served by keeping one case in federal court. Therefore, the sixth factor weighs in favor of this Court declining jurisdiction.

Seventh, there is no particular public interest in the settlement of the uncertainty of obligation here. Therefore, this factor is neutral.

Eighth, there are other available and more convenient remedies – namely, each issue raised by Mr. Sumner in the Second-Filed Action could be remedied as counterclaims to the First-Filed Action without the inconvenience of raising, briefing, and arguing the same state law issues once before the state court and then again before the federal court. The state court is an available forum and there are remedies available to Mr. Sumner in state court once he raises his claims in an answer to the First-Filed Action. Therefore, the eighth factor weighs in favor of this Court declining jurisdiction.

Ninth, a general policy of restraint based on notions of comity and federalism are at play when there is pending state court litigation with the same issues. Here, it is exactly the same factual and legal contentions regarding the enforceability of the Agreement that are the subject of both the First-Filed Action, which was filed in and will be remanded to state court, and the Second-Filed Action, which was filed in federal court only after Mr. Sumner joined in the removal of the state court action. Not only was the action originally filed in state court to where it will also be remanded, but both the First-Filed and Second Filed Actions involve solely issues of state law. This Court finds it particularly persuasive that there has been and will be pending state court litigation with the same issues and those issues involve entirely matters of state law. It is when there is a state court action pending involving issues of state law that a federal court should be particularly attuned to the general policy of restraint espoused by "Our Federalism." Therefore, the ninth factor weighs in favor of this Court declining jurisdiction.

Tenth, permitting the Second-Filed Action to remain in federal court while the First-Filed Action must be remanded will create duplicative litigation. Both parties dispute the validity of the contract, then dispute who can enforce the contract if it is valid, then each party accuses of the other of tortious interference with a contractual relationship. The only additional issue raised in the Second-Filed Action is the Pennsylvania Wage Payment and Collection Law claim. But even still, this claim is entirely contingent on the validity and enforceability of the contract because Mr. Sumner brings this claim in the alternative claiming that, if the contract was in fact valid, then he should have been paid certain wages due under that contract. Because the one additional claim in the Second-Filed Action is contingent on the issues in the state court action, it does not relieve the cases of being duplicative. The heart of what must be adjudicated is duplicative; especially considering this will likely be raised as a counterclaim when Mr. Sumner files his answer in the First-Filed Action. This type of duplicative litigation is unnecessary,

inefficient, uneconomical, and creates a risk of inconsistent results. Therefore, the tenth factor weighs in favor of this Court declining jurisdiction.

Eleventh, and finally, this Court has a great interest in preventing litigants from using the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata. The Court notes that in this case, Defendants were sued in state court. Once Defendants removed to federal court, they immediately began to assert that Plaintiff had failed to include the proper Lockton entity – the Northeast Series. Presumably, Defendants' Counsel was well aware that Northeast Series is a New York corporation, like Plaintiff, considering the same counsel represents the Northeast Series as well. Therefore, the Court is left with impression that Defendants removed to federal court, well aware of the fact that when the Northeast Series was in fact joined, the case would need to be remanded to state court. After this removal, Defendant Sumner then filed a related federal court action stemming from the same nucleus of operative fact. While the Court will not speculate as to motives, it suggests the type of "procedural fencing" that is to be discouraged.

Furthermore, Defendant Sumner's federal suit centered on the same issues, which Defendants insist should remain in federal court even if the First-Filed Action is remanded to state court, but without any explanation by Defendants as to why this case must remain in federal court. As is demonstrated by the foregoing ten factors, there is no compelling reason for this action to remain in federal court. In addition, Mr. Sumner himself is a citizen of Pennsylvania so interstate discrimination is unlikely and the issues are those of state law so it is likewise unlikely that this Court would exercise any greater expertise. Essentially, the Court gleans no reason why Defendants filed this matter and insist it remain in federal court aside from attempting to start the race for res judicata. But the Court will have no role in this type of procedural posturing. Therefore, the eleventh factor weighs in favor of this Court declining jurisdiction.

This case falls squarely within the rationale announced by the Supreme Court long ago in *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942). Mr. Sumner seeks to litigate matters that will be pending in state court upon remand in federal court as well, which is plainly uneconomical. That pending state court matter involves the same issues, which are indisputably governed entirely by state law. In addition, Mr. Sumner is a defendant in state court who seeks to bring this federal suit against the party that is the plaintiff in state court. As the Supreme Court warned, this "would be uneconomical as well as vexatious for a federal court to proceed in a

declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Id.* at 495. This court heeds the longstanding warning that "gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided," particularly in light of the analysis of the foregoing eleven factors. *Id.* Therefore, the Court finds that it should exercise its discretion to decline jurisdiction over this matter and it will so decline. The Second-Filed Action will be dismissed without prejudice to refile in state court.

## V.     Conclusion

Based on the foregoing, Plaintiff's Motion for Consolidation and Remand is granted in part, denied in part. Insofar as Plaintiff's Motion seeks consolidation of 16-CV-2217 and 16-CV-2218, Plaintiff's Motion is DENIED. Insofar as Plaintiff's Motion seeks remand of 16-CV-2217, Plaintiff's Motion is GRANTED.

Insofar as the Court raised and the parties briefed the issue of declining jurisdiction over 16-CV-2218, the Court will exercise its discretion to decline jurisdiction and the case will be DISMISSED WITHOUT PREJUDICE.

BY THE COURT:

/s/ C. Darnell Jones, II
C. DARNELL JONES, II     J.